THE DOGGETT, BASSETT & HILLS CO. *v.* HERMAN and another.*

SWEET and others *v.* SAME.

CLARK and another *v.* SAME.

FIELD and others *v.* SAME.

KENDALL and another *v.* SAME.

WEIL and others *v.* SAME.

THE GAUSS-HUNICKE HAT CO. *v.* SAME.

[WILLIAM BABCOCK intervenor in each of the foregoing cases.]

*(Circuit Court, D. Colorado.* 1883.

FRAUDULENT PREFERENCES.

A preference made by a delivery of part of the assignor's estate is void under the Colorado statute, where the delivery to the preferred creditor and the assignments are simultaneous, or so nearly so as to constitute parts of one and the same transaction.

Prior to the fourteenth of October, 1882, the defendants, Max Herman and Solomon Herman, composing the firm of Herman Bros., were merchants doing business at Leadville and at Boulder, in this

*From the Denver Law Journal.

state, and also having a branch store at Loveland. They had a stock of goods at Leadville valued at about $20,000, one at Boulder valued at about the same, and one at Loveland valued at about $3,000. They were, on the said fourteenth day of October, and had been for some time previously, insolvent, owing debts amounting to about $100,000, the greater part of which had been contracted within the 90 days preceding, and were indebted, among others, to the plaintiffs in these suits. On the fourteenth day of October they made a transfer of their entire stock of goods at Leadville to the First National Bank of Leadville, one of their creditors, in payment of a debt of some $8,000. On the sixteenth day of October they conveyed the stock at Loveland to one Anderson, another creditor, in payment of another debt.

On the fifteenth day of October, the day after their transfer of the Leadville stock as above mentioned, defendants met in Denver for the purpose of considering their affairs, and at that conference the propriety of making an assignment for the benefit of creditors was discussed. On the succeeding Tuesday, October 17th, they again met in Denver, and an assignment was then and there drawn up and executed, conveying all their property to one J. H. Monheimer, as trustee or assignee for their creditors. This instrument was fully executed on the 17th, and nothing remained but the acceptance of the assignee, and the delivery to him of the property. It was expected that the assignee would signify his acceptance and take possession on the morning of the 18th, as he in fact did. On the evening of the 17th, after executing the assignment, Max Herman, one of the assignors, proceeded to Boulder and there met at the depot, upon his arrival, the intervenor, William Babcock, who was also a creditor of the firm of Herman Bros. At that meeting Herman informed Babcock that the assignment had been executed; that the assignee would probably take possession the next morning; and that whatever was done to secure Babcock must be done quickly. It was accordingly agreed that Babcock should take goods out of the store that night in payment of his debt, including certain debts of others assumed by him, making his entire claim about $2,500. During the night of the 17th the goods thus turned over to Babcock were removed from the store and deposited in a cellar rented by Babcock for the purpose. The next day the assignee took possession of the goods remaining in the store, and on the twenty-third day of October he sold the entire stock to Babcock for the sum of $13,000, which was paid, and is now in the hands of the assignee. The plaintiffs in these suits sued out

writs of attachment on the ground that the assignment to Monheimer was fraudulent and void, and upon the writs thus obtained the marshal levied upon the goods in the hands of Babcock. The latter commenced proceedings in replevin in a state court against the marshal, and by virtue of such proceedings seized the goods, giving the usual bond for the return of the property, or its value, if a return should be awarded. Upon the trial of the replevin suit in the state court it was held that the court had no jurisdiction, because the property was, at the time of the commencement of the replevin suit, in the custody of this court, and judgment was rendered in favor of the marshal for the return of the goods, or, in case a delivery thereof cannot be had, then for the sum of $3,670, being the value of said goods.

*Hugh Butler* and *John Rogers,* for plaintiffs.

*Richard M. Whiteley, Alpheus Wright,* and *Waldheimer & Jenkins,* for the intervenor.

McCRARY, J. Upon the facts of this case as above stated the following questions arise: *First.* Was the assignment to Monheimer fraudulent and void? *Second.* Did Babcock acquire a good title to the goods by virtue of his purchase from the assignee? By the statute of this state, "to regulate assignments for the benefit of creditors," approved February 12, 1881, it is provided that a preference may be given in favor of servants, laborers, and employes of the assignor to the amount of not more than $50 to any one person. And it is further provided that "all the residue of the proceeds of such estate shall be distributed ratably among all other creditors; and any preference of one creditor over another shall be entirely null and void, anything in the deed of assignment to the contrary notwithstanding."

The effect of this statute is, no doubt, to render preferences which are provided for in the instrument itself inoperative, while upholding the validity of the assignments; but the question here is whether a preference made by a delivery of part of the debtor's estate to one or more of his creditors in payment of their debts will render the assignment void, where the two acts are simultaneous, or so nearly so as to constitute parts of one and the same transaction.

In the present case it appears that after the assignment was executed, but before the assignee had accepted or actually taken possession of the goods, the assignors, who were hopelessly insolvent, went to Babcock, one of their creditors, and informed him of the assignment, and proposed to turn over to him a part of the stock of goods, in full payment of his demand, before the assignee should take pos-

session on the succeeding day. It was arranged that the transfer to Babcock should be made that night, in order to prevent the goods coming into the hands of the assignee. It would seem clear that this preference given to Babcock and the assignment to Monheimer were parts of the same transaction. The assignment had been executed before the goods were taken out and delivered to Babcock, and possession was about to be delivered to the assignee. Babcock, knowing this fact, took the goods from the store to secure himself in full, to the exclusion of other creditors. The transactions were connected and blended together in such a way as to make it impossible in law to separate them. It cannot be said that the preference was given in good faith before the assignment was executed; nor can it be claimed that Babcock took the preference in ignorance of the assignment. A transaction of this character is a plain violation of the statute above cited. If this assignment can stand, an insolvent debtor in this state may in one day, and by substantially one general arrangement, turn over nine-tenths of his property to favored creditors, and one-tenth to an assignee to be divided among those not so favored. The fact that the preference was not provided for in the assignment itself, but by an arrangement or transfer outside of it and contemporaneous with it, shows the intent to evade and violate the statute; for, if all the property were conveyed to the assignee, and the preferences expressed in the assignment, the law would declare the preference void and the assignment good. All the property being within the control of the court in the hands of the assignee, all the creditors could be protected in their rights. But where the preference is by actual delivery to the preferred creditors, for the purpose of keeping it from passing to the assignee, the purpose of the statute, which is equality among creditors, is defeated, and the courts are deprived of the means of enforcing its eminently just and equitable provisions. The assignment must be held to be void.

2. It remains to be determined whether the intervenor, Babcock, acquired a good title to the goods by virtue of his purchase from the assignee. That he had notice of the fraudulent intent of the assignors, and their purpose to evade the provisions of the statute, is apparent from the facts already stated. But it is insisted that the proof does not show that Monheimer, the assignee, was a party to the fraud, and that, therefore, he acquired a good title, and conveyed a good title to Babcock. In our opinion it is not necessary, in order to set aside the assignment as fraudulent, to show that Monheimer, the assignee, was a party to the fraud. The intent of the assignor

in making the assignment is the material consideration in determining as to its validity in cases where it is assailed as fraudulent. The assignee is not personally interested; the real parties in interest are the debtor on one side and the creditors on the other. If a debtor conceives the purpose of defrauding a portion of his creditors, and an assignment of his property is a part of the scheme, it would, as it seems to us, be extremely unreasonable to hold that, by concealing his purpose from the assignee, he may be permitted to consummate his fraud as against the creditors, where the assignor himself selects the assignee and makes the assignment to him without the knowledge of the complaining creditors. We think the view here expressed is supported by the weight both of reason and authority. Burrill, Assignm. § 337, and cases cited.

As the assignment to Monheimer was manifestly executed for the purpose of depriving these plaintiffs of their rights under the statute of Colorado, and thereby of hindering, delaying, and defrauding them in the collection of their debts, and as the intervenor, Babcock, had full knowledge of these facts, we must hold that as to him the assignment was unlawful and fraudulent, and passed no title to the assignee, and that Babcock does not stand in the light of a *bona fide* purchaser in good faith.

The result of these views is that the court finds the issues upon the intervening petition of William Babcock for the plaintiff in the attachment, and judgment will be entered accordingly.